# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# STATESBORO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) Case No. CR609-044 |
| | ) |
| NATHAN ERIC CUTCHENS, | ) |
| | ) |
| Defendant. | ) |

## **REPORT AND RECOMMENDATION**

Nathan Eric Cutchens, who is charged with possession of a firearm and ammunition by a convicted felon, moves to suppress all evidence obtained during the execution of a search warrant for his residence in Glennville, Georgia. Doc. 21. He argues that the warrant was deficient because the supporting affidavit failed to set forth any probable cause basis for the search. While it must be acknowledged that there are significant problems with the affidavit presented in support of the warrant, the affidavit was not so deficient that it was objectively unreasonable for the officer to rely upon the state judge's determination of probable cause. Given the officer's good faith, suppression is not required.

## BACKGROUND

On January 26, 2009, Lt. Kevin Keyfauver of the Tattnall County Sheriff's Department applied for a warrant to search 6489 Bluff Lake Road in Glennville, Georgia, a residence described in the warrant application as being "in the custody and control of Nathan Eric Cutchens." Doc. 21-2 [hereinafter "Aff."]. The objects of the search were firearms and ammunition that Cutchens was prohibited from possessing because of his status as a convicted felon. *See* O.C.G.A. § 16-11-131.

In the section of his affidavit setting forth the facts tending to establish probable cause, Lt. Keyfauver related that earlier that same day a caseworker for the Department of Family and Children Services (hereinafter "DFACS") notified him that she had received several complaints that Cutchens was selling prescription pills and beating his girlfriend (Sherry West) and that a child in their home (West's 11-year-old son) was not attending school and had been seen walking around with a firearm. Aff. at 2-3. Based on these complaints the

caseworker "traveled to the home of Cutchens and West,"[1] spoke with Ms. West, and learned that her son and Cutchens were not present. *Id.* at 1-2. At a subsequent meeting with Cutchens, West, and the 11-year-old at the DFACS office, the caseworker specifically asked Ms. West's son about possessing a firearm. The child responded "that the guns are in the house locked up and that Eric (Cutchens) has the key." *Id.* at 2. The child described the weapons as a .22 caliber rifle, 20 gauge shotgun, and a .243 caliber rifle, and he also mentioned a pistol, but the caseworker could not remember any specifics about that weapon. *Id.*

Lt. Keyfauver next stated that in "early January" a state probation officer reported to him that an "anonymous caller" (who mistakenly believed that Cutchens was on probation or parole) had indicated "that Cutchens was in possession of a firearm and killing dogs in the neighborhood he lives in."[2] *Id.* at 2. Finally, Lt. Keyfauver noted that on October 15, 2008, he had responded to a report of a domestic dispute

---

[1] The affidavit does not disclose the address of this "home" or indicate when the caseworker made her home visit.

[2] The affidavit did not state when the probation officer received the anonymous call or disclose when the tipster had made his or her observations. Nor did the affidavit describe which "neighborhood" the tipster was referring to.

at 6489 Bluff Lake Road involving Cutchens and his wife, Joyce, who informed the officers "that her husband Nathan Eric Cutchens had recently been released from Georgia State Prison and has done nothing but go hunting and make demands of her. Joyce Cutchens stated that Eric Cutchens is a convicted felon and had possession of several firearms." *Id.* After receiving written consent from both Cutchens and his wife, the officers searched their home and the vehicles on the property. This search revealed numerous firearms, including a pistol and a gun belt by the front door, a 30.06 caliber rifle, 20 gauge pump shotgun, .45 caliber pistol, and assorted ammunition in Cutchens' pickup truck, and a .25 caliber pistol in another vehicle. Cutchens acknowledged that he was a convicted felon but denied ownership of the firearms, claiming that they were his wife's and that she had placed them in his truck. *Id.* Cutchens was then arrested on an outstanding Florida warrant. (Nothing in the affidavit suggests he was charged with unlawful possession of firearms on this occasion.)

Based upon this affidavit, a Tattnall County superior court judge issued a warrant authorizing a search of 6489 Bluff Lake Road to locate firearms and ammunition believed to be unlawfully possessed by Nathan

4

Eric Cutchens at that residence.

## ANALYSIS

Cutchens contends that the facts set forth in the affidavit did not provide probable cause for the issuance of the warrant, noting that the affidavit fails to state that the location to be searched was Cutchens' residence and fails to place Cutchens at that location "within a sufficient time frame."[3] Doc. 21 at 3.

The warrant in this case is premised upon the fairly detailed Affidavit and Application for a Search Warrant prepared by Lt. Keyfauver. The form affidavit instructed the officer to set forth the facts that he believed created probable cause that the listed firearms (unlawfully possessed by Cutchens as a convicted felon) "are presently located at" 6489 Bluff Lake Road. Aff. at 1. Lt. Keyfauver's probable

---

[3] Cutchens' suggestion that the affidavit is deficient for failing to establish that he "resided" at 6489 Bluff Lake Road somewhat misses the mark. Doc. 21 at 2. Of course, the pertinent question for the issuing judge was not whether Cutchens *resided* at that location but whether evidence of his criminal possession of firearms was likely located at those premises, for officers are entitled to seek a warrant authorizing a search for evidence wherever it is located. Nevertheless, as discussed below, a genuine question remains as to whether the affidavit ever established probable cause to believe that any such evidence was concealed at the Bluff Lake Road residence on the date the warrant issued.

5

cause statement consisted of six paragraphs of single-spaced type covering one and a third pages. *Id.* at 1-2. The affidavit clearly established that Cutchens resided at 6489 Bluff Lake Road in October 2008 when Lt. Keyfauver and other officers responded to a domestic dispute at that address and received Cutchens' written consent to search his residence. *Id.* at 2. Nowhere, however, does the affidavit positively state that Cutchens still resided at that residence in January 2009 when Lt. Keyfauver applied for a warrant to search the premises. While Keyfauver indicated in the opening paragraph of his application (in the section asking the officer to detail the nature of the property to be searched and its location) that 6489 Bluff Lake Road "is in the custody and control of Nathan Eric Cutchens," *id.* at 1, the officer's factual recitation of probable cause does not nail down exactly where Cutchens was residing on January 26, 2009. In particular, though Keyfauver states that he received information from a DFACS caseworker earlier that day that she had "traveled to the home of Cutchens and West" and that West's 11-year-old son later stated that Cutchens had the key to guns that were locked up "in the house," *id.* at 1, 2, at no point does Lt. Keyfauver ever identify the location of the home that the caseworker

6

visited. Similarly, Lt. Keyfauver's reference to information from a state probation officer that an anonymous caller had reported seeing Cutchens with a gun and killing dogs "in the neighborhood he lives in" never specifies the location of that neighborhood. While Lt. Keyfauver evidently believed that Cutchens was still residing at 6489 Bluff Lake Road at the time he applied for a search warrant, he never affirmatively states so in his affidavit. Thus, the judge to whom the affidavit was presented was required to infer that the "home of Cutchens and West" visited by the caseworker and "the neighborhood" mentioned by the anonymous caller were in fact 6489 Bluff Lake Road, even though there are no specific facts set forth in the affidavit to warrant such an inference. While the affidavit states that both Eric Cutchens and Joyce Cutchens resided at that address in October 2008, the reader is left to speculate as to whether Eric continued to reside there after his domestic dispute with his wife and arrest by the officers.[4]

---

[4] It could be argued that this was an entirely permissible inference, for, after all, Lt. Keyfauver was seeking a warrant to search for the specific guns mentioned by the 11-year-old to the DFACS caseworker and Keyfauver certainly wanted to search the residence where those guns would likely be found (not some former Cutchens' residence). But it is the task of a reviewing court to examine the face of the particular affidavit under attack on a case-by-case basis "to determine what facts are included and what critical information has been left out." *United States v. Martin*,

7

The warrant affidavit is also deficient with respect to the time element. Lt. Keyfauver dutifully reports receiving information from the DFACS caseworker on "January 26, 2009, at 10:30 a.m." Aff. at 1. But while Keyfauver notes that the caseworker had received several complaints about Cutchens and his girlfriend, had traveled to their home, and had questioned the 11-year-old child about firearms in that home, he never indicates *when* the caseworker made the home visit or interviewed the child. The same problem exists as to the information furnished by the state probation officer. While Keyfauver reports that he received that information in "early January" (presumably 2009), he does not reveal when the probation officer received the anonymous call or when the anonymous caller had observed Cutchens possessing a firearm and killing dogs. The reader is thus left to infer that the caseworker recently acquired her information and that the probation officer recently heard from the anonymous caller who recently made his or her observations.

---

297 F.3d 1308, 1313 (11th Cir. 2002). Any inferences to be drawn from the facts set forth in the affidavit must be drawn by the magistrate or judge, not by the officer who presents the affidavit. *Johnson v. United States*, 333 U.S. 10, 13-14 (1948) ("The point of the Fourth Amendment . . . is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive

But these are inferences that are not directly supported by the facts set forth in Lt. Keyfauver's affidavit.

The government suggests that the deficiencies identified by the Court result from an overly technical reading of Lt. Keyfauver's affidavit. The Court agrees that it "should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner," *United States v. Ventresca*, 380 U.S. 102, 109 (1965), but it does not agree that it has given the affidavit such a strained or uncharitable interpretation. Any search warrant affidavit is deserving of a close reading by the issuing magistrate or judge, who must exercise his independent judgment in assessing probable cause and who cannot simply ratify the conclusions of the officer seeking the warrant. *Illinois v. Gates*, 462 U.S. 213, 239 (1983). A little more detailed attention to Lt. Keyfauver's affidavit by the issuing judge would have disclosed its deficiencies and, if those deficiencies had not been corrected by the affiant, would have led to the denial of the warrant.[5]

---

enterprise of ferreting out crime.").

[5] This is not meant as a criticism of the judge who issued the warrant, for the defects in Lt. Keyfauver's probable cause statement do not leap out upon an initial

In order to accept the government's position that the factual averments of the affidavit established probable cause, the Court must find that the issuing judge properly inferred that Cutchens resided at 6489 Bluff Lake Road (or stored his guns there) at the time Lt. Keyfauver sought authorization to search, despite the fact that the affidavit never specifically so states. It is fair to assume that the *officer* made such an inference, else why would he be seeking a warrant to search a residence for weapons unless he believed them to be on the premises. But the Constitution requires that the inference be drawn by a neutral and detached judicial officer, and in order to perform his constitutional duty, the judicial officer must be presented with sufficient facts to allow him to independently make the required inference. *Groh v. Ramirez*, 540 U.S. 551, 575 (2004) ("The Fourth Amendment has interposed a magistrate between the citizen and the police . . . so that an objective mind might weigh the need to invade [the searchee's] privacy in order to enforce the law.") (internal quotes omitted).

---

reading of his affidavit. Nor does the Court know the circumstances surrounding the judge's review of the warrant application, what time pressures he may have been under, or whether he asked the affiant to clarify some of his statements (for Georgia law permits a magistrate or judge reviewing a warrant application to consider such

Whether this affidavit -- when read in a commonsense rather than a hypertechnical fashion -- sets forth sufficient facts to allow such an inference is a far closer question than the government has acknowledged. The only reference to 6489 Bluff Lake Road in Lt. Keyfauver's probable cause statement pertains to the October 15, 2008 incident investigated by Keyfauver and other officers, which establishes that Cutchens resided at that address on that occasion. But, as noted earlier, the affidavit never specifically states that Cutchens continued to reside at the Bluff Lake Road in January 2009 when Lt. Keyfauver applied for a warrant to search that property. Indeed, nothing in the probable-cause section of the affidavit rules out the possibility that it was Cutchens -- not his wife -- who vacated 6489 Bluff Lake Road following their domestic dispute (and Cutchens' arrest) in October 2008 or precludes the inference that in January 2009 Cutchens was residing with his girlfriend at some residence other than Bluff Lake Road.

The affidavit and application, however, contains another significant reference to 6489 Bluff Lake Road, although this reference does not

---

unrecorded oral testimony). *See King v. State*, 263 Ga. 741, 743, 438 S.E.2d 620 (1994).

appear in the section detailing the facts tending to establish probable cause. In the opening paragraph of his affidavit Lt. Keyfauver not only seeks authorization to search 6489 Bluff Lake Road (a property which he describes with particularity) but goes on to state that "said residence is in the custody and control of Nathan Eric Cutchens." Aff. at 1. Admittedly, even this paragraph of the warrant application does not specifically state that Cutchens *resided* at the Bluff Lake Road address. But it is certainly arguable that, giving the affidavit a fair reading, the issuing judge was entitled to infer that Cutchens still resided at that address and that the caseworker's January 26, 2009 report that a specific group of firearms was to be found in Cutchens' "house" was intended to refer to the Bluff Lake Road property. This is a close question, but on balance, the Court is persuaded that the serious deficiencies in the affidavit deprived the warrant of the required probable cause foundation, for the issuing judge was left to engage in too much guesswork and required to make too many factually unsupported inferences in order to conclude that the described firearms were presently located at 6489 Bluff Lake Road.

But even though the information set forth in Lt. Keyfauver's

affidavit did not furnish probable cause for a warrant to search 6489 Bluff Lake Road, the officer's reliance upon that warrant was objectively reasonable and, therefore, the evidence seized pursuant to the execution of that warrant need not be suppressed.

The judicially-crafted exclusionary rule does not apply where an officer acts in objective, good faith reliance upon a search warrant that is only later determined to be invalid as not supported by probable cause. *United States v. Leon*, 468 U.S. 897, 900 (1984) (modifying the Fourth Amendment exclusionary rule to preclude suppression "of evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause."). Evidence obtained under an invalidated search warrant must be suppressed only if the issuing magistrate wholly abandoned his judicial role or "the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *Id.* at 926; *United States v. Taxacher*, 902 F.2d 867, 871 (11th Cir. 1990) (the *Leon* court "stated that searches conducted pursuant to warrants rarely require suppression"). The appropriate question for a

reviewing court to consider is "whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization." *Leon,* 468 U.S. at 922 n. 23.[6]

The Court's careful review of the affidavit offered in support of the application for a search warrant has identified a number of deficiencies in that affidavit. Since a judicial officer considering a warrant application must give the supporting affidavit a careful (though not hypertechnical) reading, the issuing judge should have discerned these problems as well. It must be remembered, however, that the good faith exception to the exclusionary rule recognized in *Leon* "did not establish a 'reasonable jurist' test as the threshold." *Taxacher,* 902 F.2d at 872. Instead,

---

[6] The *Leon* court reasoned that the purpose of the exclusionary rule -- which is "to deter police misconduct rather than to punish the errors of judges and magistrates" -- is not served "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope," for where there is no police illegality there is nothing to deter. 468 U.S. at 916, 920, 921. While a warrant issued by a magistrate normally suffices to establish that the officer acted in good faith in conducting his search, the Court identified four situations where it would be unreasonable for an officer to rely upon a warrant (and, thus, where suppression would remain an appropriate remedy): (1) where the magistrate or judge "was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth;" (2) "where the issuing magistrate wholly abandoned his judicial role;" (3) where the warrant is "based on an affidavit 'so lacking in indicia probable cause as to render official belief in its existence entirely unreasonable;'" and (4) where the warrant is "so facially deficient . . . that the executing officers cannot reasonably presume it to be valid." *Id.* at 923. Cutchens has not argued that any of these

*Leon's* good faith inquiry focuses on the reasonableness of the *officer's* actions, and the Eleventh Circuit has recognized that "because a reasonable jurist has more legal training than a reasonably well-trained officer, what would be reasonable for a well-trained officer is not necessarily the same as what would be reasonable for a jurist." *Id*. Thus, the fact that a thoughtful and competent jurist should have recognized the affidavit's insufficiencies does not mean that the affidavit was so barren of probable cause that it was unreasonable for Lt. Keyfauver to rely upon the superior court judge's probable cause finding. The information set forth in the affidavit clearly established good grounds to believe that Cutchens had unlawfully possessed firearms some three months prior to the warrant application. The officer also referenced recent reports -- one received on the very day the warrant was sought -- from two separate state officials that Cutchens was again in possession of firearms at his "home" and in his "neighborhood." While this Court has identified gaps and holes in the information set forth in the affidavit, and while those problems should have been apparent to a judge trained in constitutional law and Fourth Amendment doctrine, the

---

limitations to the *Leon* good faith rule is applicable in this case.

Court is persuaded that, from the perspective of a reasonably well-trained police officer, the affidavit was not "'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *Leon*, 468 U.S. at 923.

Lt. Keyfauver presented a detailed affidavit to a state judge and sought his independent judicial assessment that there was sufficient probable cause to justify the issuance of a search warrant. Even though the judge should have realized that the warrant affidavit was fatally deficient in its probable cause showing, "[p]enalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations." *Leon*, 468 U.S. at 921. In short, the warrant affidavit in this case was not so deficient that Lt. Keyfauver should have known that the search warrant was invalid despite the issuing judge's independent finding of probable cause. Since the officer's good faith reliance upon the flawed warrant was objectively reasonable,[7] suppression is not required.

---

[7] In applying the good-faith standard established by *Leon*, the Court has confined its inquiry to the application and affidavit prepared by Lt. Keyfauver, as neither the government nor Cutchens elected to present any extrinsic evidence at the suppression hearing. While the Eleventh Circuit has held that in assessing an

# CONCLUSION

For the above reasons, Cutchens' motion to suppress should be **DENIED**.

**SO REPORTED AND RECOMMENDED** this  26th  day of August, 2009.

/s/ G.R. SMITH
**UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA**

---

officer's good faith a reviewing court "may" consider evidence beyond the four corners of the affidavit (such as information known to the affiant but omitted from his affidavit), *United States v. Martin*, 297 F.3d 1308, 1309 (11th Cir. 2002), the circuit court has since made clear that the court need not look beyond the facts stated within the affidavit in deciding whether the good faith exception applies. *United States v. Robinson*, 336 F.3d 1293, 1297 (11th Cir. 2003). (*Martin* did not hold that a court "must" consider evidence outside the four corners of the affidavit).